Elizabeth SAUNDERS, Plaintiff,

v.

Don HUNTER, individually and in his official capacity as Sheriff of Collier County, Ray Sutton, individually and in his official capacity, Russ Howald, individually and in his official capacity, Jim Hansen, individually and in his official capacity, Joe Jones, individually and in his official capacity, and William Cox, individually and in his official capacity, Defendants.

No. 97–58–CIV–FTM–17D.

United States District Court, M.D. Florida, Fort Myers Division.

Oct. 2, 1997.

Debra A. Rowe, Law Office of Debra A. Rowe, Fort Myers, FL, for Plaintiff.

Keith C. Tischler, Powers, Quaschnick, Tischler & Evans, Tallahassee, FL, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the Report and Recommendation entered by Magistrate Judge George T. Swartz, on June 30, 1997.

Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, the parties had ten (10) days after service to file written objections to the proposed findings and recommendations or be barred from attacking the factual findings on appeal. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc). Objections were filed by defendant on the Report and Recommendation on July 16,1997.

In this case, the Court agrees with the Magistrate Judge's recommendation to deny Defendants Ray Sutton and Jim Hansen's, Motion to Dismiss Count IV and V and grant Joe Jones and William Cox's Motion to Dismiss Count IV and Count V; grant all allega-tions dismissed in Count IV and V regarding First Amendment claims, Fifth Amendment claims and Fourteenth Amendment Due Process Clause claims; all allegations dismissed in Count IV as to Fair Labor Standard Act claims; the Motion to Dismiss is denied in all other respects. Further, The Court agrees that Don Hunter's Motion to Dismiss Count III and Count VII should be granted and in all other respects be denied. After reviewing the Report and Recommendation and findings in light of the Defendant's objections, this Court adopts the Magistrate Judge's Report and Recommendation (hereinafter "R & R").

## I. STATEMENT OF THE CASE

The plaintiff brings a seven (7) count complaint alleging the following: Count I violations of Whistle-blower's Act (Fla.Stat. § 112.3187 et seq.); Count II, violations of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.); Count III a claim for Lost Wages; Count IV violations of 42 U.S.C. § 1983 against Sutton, Howald, Jones Hansen and Cox; Count V violations of 42 U.S.C. § 1983 against Hunter, Sutton, Howald, Hansen and Cox; Count VI violations of 42 U.S.C. § 1983 against Hunter; and Count VII violations of Fla.Stat. § 112.532 against Hunter.

The plaintiff began employment with Donald Hunter, Sheriff of Collier County, as a certified corrections officer, on January 1,1995. The defendants Ray Sutton, Russ Howald, Jim Hansen, Joe Jones and William Cox were also employed by Sheriff Hunter. Russ Howald was a Corrections Officer with the rank of Commander and was the plaintiff's supervisor; Jim Hansen was a Law Enforcement Officer with the rank of Lieutenant and the plaintiff's supervisor; Joe Jones was a Law Enforcement Officer with the rank of Sergeant and plaintiff's supervisor; both Ray Sutton and William Cox were Correction Officers and Plaintiff's co-workers.

On November 14, 1995 the Plaintiff was transferred to the Collier County Drill Academy (hereinafter "Academy") as an instructor. The plaintiff was one of only two (2) female officers there. After arriving at the

Academy, the plaintiff alleges she was subject to profanity, gender biased remarks, and sexual comments from male staff members including co-workers and supervisors. The following are the plaintiff's allegations, which must be taken as true in ruling on Motions to Dismiss.

On November 28, 1995, the plaintiff went on a work related trip to study the facilities and grounds at Paris Island, South Carolina. When she returned from her trip, the plaintiff and others were told by Hansen to falsify their time cards to specify less hours than those actually worked. On September 24, 1996, the plaintiff sent an anonymous letter to the Professional Response Bureau, (hereinafter "PRB") to report the instruction to falsify the time cards and refusal to pay overtime. Later, the plaintiff acknowledged that she wrote the letter, and Hansen and Jones began yelling at a meeting about "back" stabbers which the plaintiff believed to be directed towards her. On October 25,1996, the plaintiff was told she would not be receiving any overtime due to "errors".

On May 8, 1996, Sutton cornered the plaintiff at the Academy parking lot and threw a gift for her in her car. On June 4, 1996, plaintiff's shift was changed so that she was required to work with Sutton without supervision. On June 17, 1997, the plaintiff informed Howald of the sexual harassment by Sutton and informed him that Cox called her a bitch. The plaintiff requested he stop the behavior and further requested Howald keep their conversations private, and he agreed. On November 11, 1995, the plaintiff was called for an interview with PRB regarding the plaintiff's sexual harassment allegations. During the interview, Deputy Hisler beat his chest and rolled his eyes. On November 11, 1996, the plaintiff informed Lt. Candy of the Deputy Hisler's attitude.

On March 5, 1996, the plaintiff was held by Cox and another male officer, while her supervisor Jones hosed her down. Hansen, another one of the plaintiff's supervisors, was present at the incident. On September 18, 1996, plaintiff returned from having minor surgery and Cox taunted the plaintiff by stating, "want a piece of candy little girl" and "I'm looking for a blonde about 5'6 who

recently had surgery". On September 18, 1996, Cox followed the plaintiff around making sexual and offensive comments such as he was "disappointed that Saunders lost weight in her butt, because he likes his women with big butts". On September 23, 1996, the plaintiff requested back up via the radio and telephone, only to have her co-workers refuse backup assistance. Hansen was aware of this incident. Deputy Meire told the plaintiff, "I work with a bunch of f------ backstabbers".

In January of 1996, the plaintiff's pay did not reflect a raise that was promised to her and which others received. Howald and Jones told her the pay problems would get resolved. On August 20,1996 there was an across the board 5% pay raise that the plaintiff did not receive. On November 4, 1996, the plaintiff was advised that she would not be receiving any back pay or previously due raises. On November 15, 1996, the plaintiff was advised that the administration was aware of the pay problems but there would be no retroactive pay and at best a policy change would be implemented.

On July 24, 1996, the plaintiff had her evaluation with Hansen. The evaluation was not as good as anticipated and when the plaintiff asked for a reason, Hansen raised the subject of her sexual harassment complaint. Hansen then proceeded to explain the whole situation to Jones who was also present during the evaluation. The plaintiff was shocked that her sexual harassment complaint had an impact on her evaluation.

On April 7, 1996, the plaintiff presented her letter of intent to attend the Law Enforcement Academy (hereinafter "LEA") to Jones. On June 3, 1996, her letter of intent was returned to her to be later resubmitted. The plaintiff learned her letter had not been passed through the proper chain of authority. On August 19, 1996, the plaintiff was informed Sheriff Hunter approved her request to attend the LEA. But on September 16, 1996, the plaintiff was advised her request was denied. The plaintiff found out Hansen had been heard to say "he would do everything in his power to preclude her from attending the Academy". The plaintiff learned her application was never forwarded

for consideration. Captain Smith was aware of Hansen's threats, and disregarded them.

On January 9, 1997, the plaintiff requested a transfer to the jail which was granted. On January 22, 1997, the plaintiff was again interviewed by PRB regarding her request to transfer and was asked inappropriate questions. The plaintiff claims that the interviewer told her she should think about quitting. On October 25, 1996, Howald was relieved of his duties and was later fired.

## II. STANDARD OF REVIEW

■ The District Court shall review *de novo* any portions of the R & R concerning specific proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1). *See Gropp v. United Airlines, Inc.,* 817 F.Supp. 1558 (M.D.Fla.1993). When no objections are made, the District Judge may accept reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. *See Nettles v. Wainwright,* 677 F.2d 404, 409 (5th Cir.1982). This Court has adopted a clearly erroneous standard of review for findings which are not challenged. *See Gropp,* 817 F.Supp. at 1562.

## III. ANALYSIS

A. Standard of Review for Motion to Dismiss

■ The Magistrate Judge correctly recited the appropriate standards for reviewing a Motion to Dismiss. Under *Conley,* a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Jones v. Bd. of Comm'r of the Alabama State Bar,* 737 F.2d 996 (11th Cir.1984). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla. 1996).

"A trial court, in ruling on a motion to dismiss, is required to view the complaint in a light most favorable to the plaintiff." *Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991). Although the Court must take the allegations in a complaint as true when reviewing motions to dismiss, it is not permitted to read into the complaint facts that are not there. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986); *Beck v. Interstate Brands Corp.,* 953 F.2d 1275 (11th Cir.1992). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985) citing *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation,* F.2d 989, 995 (11th Cir.1983).

B. Motion to Dismiss Defendants Ray Sutton, Jim Hansen, Joe Jones and William Cox.

1. Count IV; Title VII Arguments

■ The defendants argue that the plaintiff failed to allege the required severe or pervasive conduct to establish a claim for hostile work environment based upon sexual harassment, as required in Title VII cases. However, the plaintiff did not bring this action under Title VII but rather under 42 U.S.C. § 1983. The plaintiff alleged violations of her rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Therefore, Title VII cases are not applicable.

In order to state an actionable claim under § 1983, a plaintiff must show that the conduct complained of has been committed under color of state law and that this conduct worked a denial of a right secured by the Constitution or laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). In this case, the nature of plaintiff's allegations are sufficient enough to fairly say at this stage that the alleged actions were committed under color of state law and that she was denied a right afforded her under the Constitution by being sexually harassed.

2. Count IV; Color of Law Arguments

Next, the defendants argue that the plaintiff's claim under 42 U.S.C. § 1983 fails to state a cause of action because it fails to

show the defendant's acted under "color of law" which is an essential element of § 1983 claims. The Supreme Court has defined "acting under color of law" as acting with the power possessed by virtue of the defendants employment with the state. *See id.* at 49, 108 S.Ct. at 2255.

In *Edwards,* the court held that co-workers without supervisory authority over a plaintiff are not operating under the "color of law", because these co-workers could not use any supervisory authority to create a hostile work environment. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1523 (11th Cir.1995). The question for this Court, is whether the conduct which plaintiff alleges can be said to have been related, in some meaningful way to Sutton, Cox, Hansen, and Joneses status as employees and/or supervisors.

■ In the instant case, plaintiff alleges that Sutton was a co-worker of the plaintiff and had "de facto" authority over her. This statement is a conclusion and according to the *Lucas* court, "In a civil rights action, more than conclusory allegations are required; a complaint will be dismissed where their allegations are vague and conclusory." *Lucas v. Cannon,* 848 F.Supp. 168 (M.D.Fla. 1994). Also, the plaintiff alleges that Cox was also a co-worker and fails to allege he had any supervisory authority over her. Under Eleventh Circuit precedent, neither Sutton or Cox had the authority to create a hostile work environment and therefore the plaintiff is unable to show Sutton and Cox were acting under "color of law." *Edwards v. Wallace Community College,* 49 F.3d 1517, 1522–23 (11th Cir.1995) (Not all actions by state employees are acts under color of law); *see also Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1982) (The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual); *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992) (No liability found under § 1983 against co-employee for harassment when harassment did not involve use of state authority or position).

■ Regarding Hansen and Jones, the plaintiff did allege both of these individuals were her supervisors, and as her supervisors used their state authority to create a hostile work environment. Hostile work environment harassment arises when "sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Hall v. Gus Constr. Co.,* 842 F.2d 1010,1013 (8th Cir.1988). The plaintiff alleged that Jones, while Hansen was present, hosed down the plaintiff while other male officers held her. The plaintiff also alleged, Hansen knew of her sexual harassment by Sutton. Further, Hansen informed Jones of the plaintiff's complaint against Sutton, but failed to take action and instead gave the plaintiff a lower evaluation based on her sexual harassment complaint. The plaintiff also alleged she learned Hansen would try to do anything to prevent her from attending the LEA, and refused to provide back-up when requested. Finally, the plaintiff alleges that the investigation into her sexual harassment claim created a hostile work environment because the first investigator beat his chest and the second interviewer advised the plaintiff to consider quitting. The totality of these allegations when presumed true, as they must be here, alleges a hostile work environment over which plaintiff's supervisors Hansen and Jones, acting under color of law, allegedly created and maintained. Therefore, the Court finds the plaintiff's allegations describe conduct that was under color of law as to Hansen and Jones. The Motion to Dismiss Count IV will be granted as to Defendants Sutton and Cox.

3. Count IV; Qualified Immunity Defense Arguments

■ The two (2) remaining defendants in Count IV are Hansen and Jones. The defendants assert protection from prosecution under the qualified immunity defense. "An official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, [including qualified immunity]." *Kentucky v. Graham,* 473 U.S. 159, 166–167, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). The court must deter-

mine whether the "legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 426 (1985). The plaintiff has the burden of showing Jones and Hansen "violated clearly established legal rights." *Cross v. State of Ala. State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir.1995).

The relevant question in this case, as in Cross, is whether these defendants as supervisors "could have believed that doing nothing in response to knowledge of a subordinate director's sexual harassment and discrimination and the creation of a hostile work environment at a facility was lawful, in light of the clearly established law." *See id.* In *Cross,* the court found that the defendant could not have believed doing nothing was lawful "in light of the clearly established law that sexual harassment and discrimination was an infringement of legal rights."

The case at bar is similar to *Cross,* in that, Hansen and Jones did nothing in response to the plaintiff's sexual harassment complaints. Jones allegedly participated in creating the hostile work environment by hosing down the plaintiff while Hansen was present. In addition, Hansen allegedly contributed to the hostile work environment by making comments regarding his intentions to keep the plaintiff from attending the LEA. At this stage of the case, the Court finds both Hansen and Jones had knowledge of the alleged sexual harassment and could not have believed that doing nothing was lawful in light of the clearly established laws regarding sexual harassment and discrimination.

### 4. Arguments Regarding First, Fourth, Fifth and Fourteenth Amendments

The Eleventh Circuit has set a four-part test to determine whether an employee has suffered retaliation from protected speech under the First Amendment. *Morgan v. Ford,* 6 F.3d 750, 754 (11th Cir.1993):

> First, a court must determine "whether the employee's speech may be 'fairly characterized as constituting speech on a matter of public concern.'" [citations omitted] If so, the district court must "weigh[ ] the

employee's First Amendment interests against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees'". [citations omitted] Should the employee prevail on the balancing test, "the fact-finder determines whether the employee's speech played a 'substantial part' in the government's decision to demote or discharge the employee." [citations omitted] Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, "the state must prove by a preponderance of the evidence that 'it would have reached the same decision ... even in the absence of the protected conduct.'" *See id.* [citations omitted]

The defendants argue that the plaintiff's speech was merely of private concern to her alone and not of public concern. The plaintiff argues widespread sexual harassment by supervisors is a matter of public concern. An employee's speech is one of public concern when "it relates to a[m]atter of political, social, or other concern to the community." *See Morgan* at 754. However, First Amendment protection remains unavailable when "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest." *See id.*

To determine whether the speech was for public or private purposes, the Court must consider the "content, form and context of a given statement as revealed by the whole record." *See id.* at 754 (citing *Deremo v. Watkins,* 939 F.2d 908, 910 (11th Cir. 1991)). The Eleventh Circuit "heartily agree[s]" that "sexual harassment in the workplace is a matter of important social interest"; however, the fact that the topic of employees speech is of public concern is not the deciding factor. *See id.* In the case at bar, the issue to be determined, is whether the plaintiff's sexual harassment complaints were related to the public, or were driven by her personal concern to improve her own employment conditions. *See id.* at 755. This Court finds the latter. The plaintiff has only alleged she suffered sexual harassment by co-workers and supervisors. The situation

and retaliation was focused on her and not other employees. Therefore, this Court finds that the plaintiff failed to allege sufficient facts to support a First Amendment claim regarding sexual harassment.

Another First Amendment violation raised by the plaintiff is the falsification of pay records. As explained below, the plaintiff is prohibited from alleging a violation of the Fair Labor Standards Act through a § 1983 claim. Therefore, this claim must be dismissed.

■ Next, the defendants argue, the plaintiff has failed to state a constitutional violation under the Fourth Amendment. The Fourth Amendment provides "the right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause ..." *Gordon v. Ottersbach,* 1997 WL 128115, 10 Fla.L.Weekly Fed. D 535 (M.D.Fla.1997). The plaintiff has cited no cases, nor can the Court find any cases, where the Fourth Amendment was cited in an employment situation. Further, the plaintiff has made no allegations that she was held in relation to a possible arrest, only that certain officers held her and hosed her down. The Court finds the plaintiff has failed to allege facts to support her Fourth Amendment claim, therefore, her allegations regarding the Fourth Amendment are dismissed.

■ The defendants argue that the Fifth Amendment applies only to federal and not to state actions and is not applicable in this case. The Fifth Amendment "restrains the federal government, and the Fourteenth Amendment, Section 1 restrains the states, from depriving any person of life, liberty, or property without due process of law." *Buxton v. City of Plant City, Fla.,* 871 F.2d 1037, 1041 (11th Cir.1989). Although the plaintiff has made no allegations regarding the federal government and those allegations in reference to the Fifth Amendment should be dismissed, the Fourteenth Amendment binds the state government and may apply in this case.

■ Under the Fourteenth Amendment Due Process Clause, the plaintiff must show that the defendants Jones and Hansen deprived her of "life, liberty, or property without due process of law." *See id.* The plaintiff must establish she was deprived of an interest that can invoke the procedural due process protections and the Court must look to the interest involved. *See id.* In *Buxton,* the Eleventh Circuit held that a liberty interest existed when the "presence of stigmatizing information [was] placed into the public record by a state entity, pursuant to a state statute or otherwise, [which] constitutes sufficient publication to implicate the liberty interest under the due process clause of the Fourteenth Amendment to the United States Constitution." *See id.* at 1046. The plaintiff claims her liberty interest was violated without due process of law when her request for attendance at the LEA was not forwarded through the proper channels and because she was questioned about her sexual harassment claim during her evaluation. However, the plaintiff has not shown that either her performance evaluation or her being withheld from entering the LEA is of public record. The Court finds that the plaintiff's allegations regarding the Fourteenth Amendment Due Process Clause should be dismissed. Defendants raise no objections to plaintiff's Equal Protection claim under the Fourteenth Amendment and those allegations shall remain.

5. Count IV; Fair Labor Standards Act

■ The defendants allege the plaintiff has improperly cited 29 U.S.C.A. § 201 in the complaint which states,

[T]he conduct of Hansen and Howald in ordering the falsification of the time cards and in prohibiting the reporting of overtime hours was in deliberate indifference and reckless disregard of and in violation of Saunders rights under 29 U.S.C. § 201 *et. seq.* 42 U.S.C. § 1983.

The Supreme Court held that a plaintiff will be permitted to sue under § 1983 if she alleges a violation of a federal statute which does not create an enforceable right, privilege or immunity or when Congress "has [not] foreclosed such enforcement of the statute in the enactment itself." *Wilder v. Virginia Hosp. Ass'n.,* 496 U.S. 498, 508, 110 S.Ct.

2510, 2517, 110 L.Ed.2d 455 (1990). The plaintiff is seeking relief under the Fair Labor Standard Act alleging that the defendant has violated clearly established law. However, the Fair Labor Standards Act provides for the exclusive remedy for failure to pay overtime wages and therefore the plaintiff may not seek relief under § 1983 for violations of the Fair Labor Standards Act. *Tombrello v. USX Corp.*, 763 F.Supp. 541 (N.D.Ala.1991). Therefore, plaintiff's allegations are dismissed from Count IV.

### 6. Count V

The defendants allege that the plaintiff impermissibly sued Sutton, Hansen, Jones and Cox, in their official capacity because she also sued Sheriff Don Hunter in his official capacity. Since the Court has determined that neither Sutton or Cox were acting "under color of law" they are dismissed from Count V as well.

In this case, the plaintiff alleged Hansen and Jones were supervisors of the Plaintiff and final decision makers, who with their decisions, created policies and customs. According to the Supreme Court, "personal capacity suits seek to impose personal liability upon a government official for action he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted) On the other hand, official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *See id.* At this stage of the law suit, the plaintiff may be able to prove the allegations that Hansen and Jones, rather than Hunter, were the policy makers in the department; therefore, these claims are not dismissed.

### C. Motion to Dismiss Defendant, Don Hunter

#### 1. Count 1; Whistle-blower's Act

The plaintiff claims she was retaliated against for complaining, through the proper chain of command and to the PRB unit, about sexual harassment and the falsification of the time card in violation of the Whistle-blower's Act, Fla. Stat. § 112.3187(2). However, the defendant argues that the plaintiff's argument is without merit for three (3) reasons: 1) it fails to allege she complained about "improper use of governmental office, gross waste of funds or any other abuse or neglect of duty on the part of an agency"; 2) she does not allege exhaustion of administrative remedies; and 3) she does not allege she personally complained to Sheriff Hunter.

The plaintiff alleges she was not paid overtime wages that were due her and when she made complaints she was retaliated against, in that she did not receive any pay increases along nor appropriate back-up when requested. Further, she alleges the sexual harassment complaints that lead to the retaliation, loss of pay, not receiving back-up and a low evaluation, was gross mismanagement, malfeasance, and gross neglect of duty. In order for the plaintiff to be protected under the Whistle-blower's Act she must disclose: (a) Any violation ... of any federal, state, or local law, rule or regulation committed by an employee or agent ... which creates and presents a substantial and specific danger to the public's health, safety or welfare or (b) any act ... of gross mismanagement, malfeasance, misfeasance, nonfeasance, gross waste of public funds, or neglect of duty committed by an employee or agent....This Court finds the plaintiff has disclosed sufficient allegations to overcome defendant's first argument.

The second argument raised by the defendant is that the plaintiff has not exhausted her remedies as required under the Whistle-blower's Act. The Sheriff's office requires an investigation under the Act to be completed within forty-five (45) days. The investigation as to plaintiff was not completed at the time her Complaint was filed. First, the Court must accept as true the plaintiff's allegation regarding department policy. Second, the plaintiff alleges she attempted to exhaust her remedies with the PRB. In *Ujcic*, the Court found a police officer was not required to air his grievances before a review board whose decision was not binding on the municipality. *Ujcic v. City of Apopka*, 581 So.2d 218, 220 (5th DCA 1991). Therefore, the plaintiff withstands defendant's second contention.

The defendant's third argument is also without merit. The defendant argues the plaintiff did not complain to Sheriff Hunter personally. Under Fla.Stat. § 112.3187(6), an employee must report any incidents under this section to a "chief executive officer as defined in § 447.203(9) or other appropriate local official." The plaintiff alleges she reported the incidents not to a chief executive officer but to her supervisors who are appropriate local officials. The Court finds, since the standard for dismissing a complaint at this stage in the case is extremely low, the plaintiff has alleged sufficient facts to withstand a Motion to Dismiss as to Count I.

2. Count III; Claim for Lost Wages under Fla.Stat. § 448.08.

The plaintiff is foreclosed from bringing an action under Fla.Stat. § 448.08 because the Fair Labor Standards Act is Plaintiff's exclusive remedy for lost wages. Section 448.07(4) Fla.Stat., states "[n]othing in this section or in § 725.07, relating to discrimination based on sex in providing equal pay for equal services performed, is applicable to any employer, labor organization or member thereof, or employee whose employer is subject to the federal Fair Labor Standards Act of 1938, as amended." The plaintiff alleges in Count II she is an employee who is covered under the Fair Labor Standards Act and defendant Hunter has admitted this allegation. Therefore, Count III is dismissed.

3. Count V; Official Capacity Liability of Hunter

A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts my fairly be said to represent official capacity, inflicts the injury the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978). In this case, the plaintiff alleges that Sheriff Hunter was a final decision maker regarding policy in the Collier County Sheriff's Department and by the policy that he was allowing, condoning, encouraging and tolerating sexual harassment and discrimination. Sheriff Hunter was also permitting retaliation against the plaintiff for reporting these incidents. Therefore, the Court finds sufficient fact were alleged by the plaintiff to withstand a Motion to Dismiss on Count V as to defendant Hunter.

4. Count VI; § 1983–Defendant Hunter's Failure to Supervise

The defendant argues that the plaintiff fails to allege a persistent and widespread constitutionally impermissible custom or practice that was permitted by Sheriff Hunter, citing *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1504 (11th Cir.1985). However, Plaintiff has alleged many instances of sexual harassment including the hosing incident as well as impermissible language used by co-workers and repeated retaliation by her supervisors. Also, plaintiff alleged impermissible behavior was conducted by Sutton, Cox, Hansen and Jones and one deputy. According to *Goodson,* a sheriff need not have participated in the impermissible behavior to be held liable but rather failure to take action could cause liability. *Goodson v. City of Atlanta,* 763 F.2d 1381, 1389 (11th Cir.1985). Plaintiff also alleged Hunter failed to supervise or discipline the co-defendants or take action when he had knowledge of their conduct. This Court finds the Plaintiff has alleged sufficient facts to withstand a Motion to Dismiss on this issue.

5. Count VI; Qualified Immunity

Since the qualified immunity issue standard was discussed above, the question is whether Sheriff Hunter could have believed, as the supervisor, that doing nothing in response to the knowledge of the sexual harassment and discrimination was lawful in light of clearly established law. *Cross v. State of Alabama,* 49 F.3d 1490, 1503 (11th Cir.1995). In *Cross,* the court found the defendant Commissioner could not have believed doing nothing was lawful in light of the clearly established law that sexual harassment and discrimination was an infringement of legal rights. *See id.* The case at bar is

similar. Sheriff Hunter did nothing in response to the sexual harassment claims by the plaintiff. At this stage of the case, the Court finds that Sheriff Hunter could not have believed that doing nothing to prevent Sutton, Hansen, Cox and Jones from continuing their sexual harassment and retaliation was lawful in light of the clearly established laws regarding sexual harassment and discrimination. Plaintiff has alleged sufficient facts to overcome the Motion to Dismiss on the issue of Qualified Immunity.

6. Count VII; Law Enforcement Officer Bill of Rights

 Under Fla.Stat. § 112.532, [w]henever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any reason which could lead to disciplinary action, demotion, or dismissal, such interrogation shall be conducted in the manner proscribed by statute. The plaintiff failed to state a claim under Fla.Stat. § 112.531. The plaintiff fails to allege she was being investigated by PRB, but rather alleges an investigation of her allegations was being conducted. Therefore, plaintiff has failed to allege sufficient facts and Count VII of the Complaint is dismissed.

Accordingly, it is **ORDERED** that the Report and Recommendation (Docket No. 17) be ADOPTED and INCORPORATED by reference herein, and Defendants Sutton, Hansen, Jones and Cox's Motion to Dismiss (Docket No. 3) be **granted** in part, as follows: Defendants Sutton and Cox be **dismissed** from Count IV and V and the clerk shall terminate them from the case; the allegations regarding the First Amendment claims, Fifth Amendment claims, and Fourteenth Amendment Due Process Clause claims in Counts V and VI be **dismissed**; the allegations regarding the Fair Labor Standards Act Claim through 42 U.S.C. § 1982 in Count IV be **dismissed**; and be **denied** in all other respects. Further, it is

**ORDERED** that Defendant Hunter's Motion to Dismiss (Docket No. 6 ) be **granted**, in part, as follows: Count III is **dismissed** with prejudice; Count VII be dismissed with prejudice; and be **denied** in all other respects.