[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12545
Non-Argument Calendar

_____

D.C. Docket No. 05-01647-CV-2-IPJ

JEANETTE M. GARY,

Plaintiff-Appellant,

versus

MIKE HALE,
in his official capacity as
Sheriff of Jefferson County, Alabama,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 3, 2007)**

Before BIRCH, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Appellant Jeanette M. Gary challenges the district court's grant of summary

judgment in favor of the defendant, appellee Mike Hale, who is named in this case in his official capacity as the Sheriff of Jefferson County, Alabama. On appeal, Gary argues that genuine issues of fact remain as to whether her employer, the Jefferson County Sheriff's Department, twice retaliated against her because she complained of discrimination in the workplace. Accordingly, Gary contends that summary judgment was improperly granted on the retaliation claim that she brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a). We AFFIRM.

## I. BACKGROUND

Gary, a black female, has been employed as a deputy sheriff in the Jefferson County Sheriff's Department ("the department") since 1977. During her tenure with the department, Gary has been employed in a number of different positions; she worked for twelve years in the jail, eight years on patrol, and is currently employed as a court officer in the divorce court. The Jefferson County Personnel Board offers a qualifying test for officers interested in being promoted to Sergeant. Gary has taken and passed this test annually since 1982. Although she has applied for and interviewed for a Sergeant position on various occasions, she has never been selected for a promotion to Sergeant.

Gary began filing internal grievances with her employer in the 1980s. Initially her grievances were generalized in nature, and were not related to either

2

sex or race discrimination. In 1981, for example, she complained that she was not given an opportunity to refuse patrol duty, while her fellow co-workers (black and white, male and female) were given such an opportunity. Gary's subsequent grievances became more specific. In 1989, she filed a complaint suggesting that job assignments were being made on the basis of race and sex. In 1991, she complained that she was denied a job transfer based on her race. In 1992, she filed a formal complaint with the Equal Employment Opportunity Commission (EEOC), alleging race and sex discrimination in violation of Title VII. The record does not disclose the outcome of these earlier grievances.

In December 2004, the department announced that it had vacancies for a number of Sergeant positions, and that it would be reviewing candidates for these positions. Gary completed an application and was granted an interview by the Promotional Review Committee ("the Committee"), an internal review board consisting of four members of the department. Of fifteen candidates, Gary was the only black female who interviewed for these positions.

The Committee uses a specific protocol, prescribed by Internal Affairs, in selecting applicants to be promoted to Sergeant. Under this system, the candidate is given a numerical point score in three separate areas. First, the Committee examines the applicant's performance evaluation form, a document in which the applicant's supervisor provides his or her evaluation of the candidate and assigns a

numerical score to the applicant. Second, the Committee reviews the applicant's personnel file, which details the applicant's professional history with the department (both letters of commendation and reprimands), and which is likewise assigned a numerical score. Finally, the Committee interviews the candidate, asks a series of boilerplate questions pertaining to the Sergeant position, and assigns a numerical score based on the candidate's responses. These point scores are then totaled and scaled, and the highest scoring applicants are selected for promotion to Sergeant.

The Committee that interviewed Gary in December 2004 consisted of Deputy Chief Paul Costa, Deputy Chief James Atkinson, Major Allen Farley, and Sergeant Michael Lindon, all of whom are white males. Each of the Committee members was given a copy of Gary's personnel file to review prior to the interview. Included in Gary's personnel file were some notations indicating that she had previously filed grievances alleging race and sex discrimination. See R1-31, Exh. N at 51, 53; R1-31, Exh. B at 45-46. Although it is unclear to what extent (if any) the fact of these prior grievances was considered in reviewing Gary's application, it is undisputed that this evidence was included in her personnel file.

After aggregating Gary's score on the three assessment metrics–her supervisor's review, her personnel file, and her interview–Gary was given a total score of 50.98, which was the second lowest of the fifteen applicants. Of the

applicants considered, Gary's scores were in the bottom range with respect to all three criteria; her interview score was the second lowest of all of the applicants, her personnel file score was the third lowest, and her supervisor's evaluation score was the third lowest. In January 2005 the department announced its promotions to Sergeant ("the January 2005 promotions"), and Gary was not among those selected. The four officers who were promoted were white males.

In February 2005 Gary filed a formal complaint with the EEOC. She alleged race and sex discrimination in the manner in which the January 2005 promotions had been carried out by the department. Her EEOC complaint also asserted a claim of retaliation, contending that the department had refused to promote her to Sergeant in January 2005 because of the complaints of discrimination that she had made throughout the 1980s and 1990s.

Following these developments, in September 2005 additional vacancies became available in the department, and Gary again applied for a Sergeant position. Once again, she was the only black female to interview for the position. The selection process was identical to the one used with respect to the January 2005 promotions, and the Committee consisted of the same four officers who had previously evaluated Gary. In October 2005, Gary was again denied a promotion to Sergeant; four white males were selected for these promotions (the "October 2005 promotions"). Gary then filed another complaint with the EEOC, contending

5

that she was just as qualified as those who were promoted but that she had been discriminated against on the basis of her race and her sex. She also alleged that she had been denied an October 2005 promotion in retaliation for her earlier complaints of discrimination.

The present appeal arises out of the complaint that Gary filed in November 2005 in the Northern District of Alabama. In that complaint, Gary asserted claims for race and sex discrimination in violation of Title VII and race discrimination in violation of 42 U.S.C. § 1981. In addition, Gary asserted a claim for retaliation under Title VII, contending that the denial of a promotion, once in January 2005 and again in October 2005, constituted retaliatory practices for her earlier attempts to complain of workplace discrimination. Hale moved for summary judgment on all counts, which the district court granted. This appeal followed.

## II. DISCUSSION

A. Standard of Review

The district court granted summary judgment in favor of Hale on Gary's race and sex discrimination claims, and, in addition, granted summary judgment in favor of Hale on the retaliation claim that Gary asserted pursuant to 42 U.S.C. § 2000e-3(a). On appeal, Gary challenges the grant of summary judgment only as to this latter claim. Thus, the sole question before this court is whether the district court properly granted summary judgment on the retaliation claim.

6

We review a district court's grant of summary judgment under a *de novo* standard of review. Gibson v. Resolution Trust Corp., 51 F.3d 1016, 1020 (11th Cir. 1995). In doing so, we apply the same legal standards as those that controlled the district court. Real Estate Financing v. Resolution Trust Corp., 950 F.2d 1540, 1543 (11th Cir. 1992) (per curiam). According to those standards, as set forth in Fed. R. Civ. P. 56(c), summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is thus entitled to judgment as a matter of law. "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.'" Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999) (citations omitted). In making this assessment, we review all facts and inferences in a light most favorable to the nonmoving party. Id.

B. Gary's Retaliation Claim

Retaliation is a separate offense under Title VII. Meeks v. Computer Assocs., 15 F.3d 1013, 1021 (11th Cir. 1994) (citing 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case for improper retaliation, the plaintiff must show three things: (1) that she engaged in a statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events. See Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999); Meeks, 15 F.3d at 1021. After these elements are shown by the

7

plaintiff, the burden shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse employment action." Meeks, 15 F.3d at 1021. We have said that the employer's burden in offering a non-discriminatory reason is "exceedingly light." Id. (citation omitted). In the event the employer offers a non-discriminatory reason for the adverse action in question, the plaintiff must then "demonstrate that [she] will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." Farley, 197 F.3d at 1336 (citation and internal quotation omitted).

Applying that analysis, we conclude that Gary established the three requisite elements for a *prima facie* retaliation case. As to the first requirement–a showing that the employee engaged in a protected activity–we have held that the filing of an EEOC complaint of race discrimination is "clearly" a protected activity for purposes of Title VII's anti-retaliation provisions. Bass v. Bd. of County Commr's of Orange County, Fla., 256 F.3d 1095, 1117 (11th Cir. 2001); see also Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (finding that internal complaints of sexual harassment, followed by the filing of an EEOC complaint, constituted engaging in a protected activity). In this case, Gary repeatedly made internal complaints of workplace discrimination in the late 1980s and early 1990s, and she filed two formal complaints of discrimination with the EEOC, one in 1992

8

and another in February 2005 (subsequent to the January 2005 promotions, but prior to the October 2005 promotions). In short, we find that Gary engaged in a protected activity for purposes of Title VII's anti-retaliation provisions.[1]

As to the second element, we have held that an adverse employment action includes an employment decision that "deprives [a person] of employment opportunities." Gupta, 212 F.3d at 587. We have stated that an adverse employment action would include the continuous denial of a salary increase, despite above-satisfactory job evaluations. Id. at 590. In Gary's case, the repeated

_____

[1] Hale argues that Gary's complaints of discrimination did not constitute engagement in a protected activity because those complaints lacked legal merit. Specifically, Hale hones in on Gary's 1981 complaint, in which she complained that her colleagues (both white and black, male and female) were given workplace advantages that she was not. Hale argues that because Gary's 1981 grievance was baseless–and because the conduct complained of was not discrimination under the law–Gary cannot be said to have engaged in a "protected activity" for purposes of Title VII retaliation.

These contentions are easily answered. First, Hale's brief cites Gary's 1981 complaint, as if that were the only complaint she filed, when in fact she filed a number of grievances alleging race and sex discrimination. See R1-31, Exh. A at 33-36 (discussing the panoply of "grievances" that Gary filed prior to her being denied a promotion). In fact, the complaints that Gary filed in 1991, 1992, and 2005 much more specifically alleged discrimination on the basis of sex and race, a fact that Hale elides in his brief.

Second, we have held that a plaintiff may engage in a protected activity for purposes of a Title VII retaliation case, even if the underlying grievances are not actually cognizable as discrimination under the law, so long as the complaining party has a "good faith, reasonable belief" that the employer has engaged in unlawful conduct. Clover v. Total Sys. Serv, Inc., 176 F.3d 1346, 1351 (11th Cir. 1999) (citation omitted); see also Gupta, 212 F.3d at 586-87 (stating that a person may complain of conduct to the EEOC and thereby establish that she engaged in a protected activity for purposes of retaliation, even if it turns out that the underlying conduct was not harassment); Taylor v. Runyon, 175 F.3d 861, 869 (11th Cir. 1999) (same). Here, we have no reason to doubt that Gary had a good faith, reasonable belief that the department had been acting unlawfully when she filed an EEOC claim in 1992 (and again in 2005) and alleged discrimination. This determination is sufficient to constitute engaging in a protected activity for purposes of a retaliation claim.

denial of a job promotion, despite being seemingly qualified for the position sought, constitutes an adverse employment action for purposes of Title VII. Accordingly, Gary has established that she suffered an adverse employment action.

Finally, with respect to the third element–causation–a plaintiff is required to establish a causal connection between the plaintiff's engagement in a protected activity and the adverse employment action. See, e.g., Meeks at 1021 (stating that the plaintiff must show "some causal relation between the two events"). We have indicated that the requirement of causation in a retaliation case is to be interpreted broadly; that is, the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." Id. (citations and internal quotation omitted). More important, and more germane to this case, we have repeatedly indicated that a plaintiff may satisfy the causal link in a retaliation case by establishing that "the employer was actually aware of the protected expression at the time it took the adverse employment action." Clover 176 F.3d at 1354; Raney v. Vinson Guard Serv., 120 F.3d 1192, 1197 (11th Cir. 1997). That is, the causation threshold may be satisfied if it can be shown "that the person taking the adverse action was aware of the protected expression." Bass, 256 F.3d at 1119. Such awareness may be established either by direct evidence, or by circumstantial evidence, Clover, 176 F.3d at 1354, such as proximity in time. Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926, 934 (11th Cir. 1995).

10

In this case, Gary successfully established, via direct evidence, that the members of the Committee were actually aware of her earlier complaints of discrimination when they made their adverse employment decision. We conclude that this showing was sufficient to meet the causation threshold for purposes of a *prima facie* retaliation case, both as to the January 2005 promotions and as to the October 2005 promotions. Because the facts and chronology surrounding each round of promotions are distinct, however, we address each of them in turn.

First, as to the January 2005 promotions, these promotions preceded Gary's formal EEOC filing in February 2005. Consequently, Gary bore the burden of showing causation by establishing that the Committee members were actually aware of her earlier protected activities– that is, her discrimination complaints in the 1980s and 1990s–when they made their adverse employment decision. Gary satisfied this burden. In fact, the Committee members made clear during discovery that they were actually aware of Gary's earlier discrimination filings and that they considered them in reaching a decision on Gary's promotion. Sergeant Michael Lindon, who prepared Gary's personnel file for review by the Committee, indicated in his deposition that because the earlier grievances constituted "activity in her career that occurred," a listing of these complaints "ended up in . . . all of the evaluator's hands" at the time they evaluated her. R1-31, Exh. N at 51-53. Major Allen Farley confirmed this account, stating in his deposition that Gary's personnel

11

file included a list of all of the grievances that she had previously filed, R1-29, Exh. 2 at 51-53, although he stated that he didn't know whether it was appropriate for the Committee to consider those grievances in making its employment decision. Id. at 53. Deputy Chief James Atkinson was more explicit on this latter point, stating that he "considered everything" in Gary's file in evaluating her for the Sergeant position, and that he "probably reviewed" the list of the earlier discrimination filings in determining her suitability for the promotion. R1-31, Exh. B at 45-46.[2] In summary, Gary provided direct evidence that the Committee members were actually aware of her earlier grievance filings when they interviewed her and declined her for a promotion in January 2005. Accordingly, we conclude that Gary succeeded in establishing the requisite causation needed to make out a *prima facie* case of retaliation.[3]

---

[2] Although Deputy Chief Atkinson indicated that he did not know how much weight would be given to Gary's earlier complaints of discrimination, he conceded that such information would have been considered. R1-31, Exh. B. At 46.

[3] The district court concluded that Gary's retaliation claim concerning the January 2005 promotions failed on the causation prong, since Gary's protected activity (her discrimination filings of the 1980s and the 1990s) was not sufficiently close in time to the decision to deny her a promotion. The court relied on our holding in Higdon v. Jackson, in which we stated that "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the [retaliation] complaint fails as a matter of law." 393 F.3d 1211, 1220 (11th Cir. 2004). Observing that Gary's earlier grievance filings were over a decade old, the district court concluded that they were too remote in time to have been a cause of the denial of a promotion in January 2005.

This conclusion was in error. Indeed, the district court's inquiry into the temporal proximity between the protected activity and the adverse employment decision was unnecessary, given the facts of Gary's case. Our decisions have made clear that a closeness in time between the protected activity and the adverse decision may be relied upon as circumstantial evidence of

Despite this determination, however, we conclude that the district court properly granted summary judgment in favor of the defendant Hale as to the January 2005 promotions, since Hale proffered legitimate non-discriminatory reasons for the adverse employment decision. See Sullivan, 170 F.3d at 1059 ("Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." (citation and internal quotation omitted)). The evidence Hale presented concerning the January 2005 promotions is sufficient

---

awareness so as to show causation. See Bass, 256 F.3d at 1119 (stating that to establish a causal connection, the decision maker's awareness of the protected activity might be established by circumstantial evidence, such as "close temporal proximity between the protected activity and the adverse action"). Put another way, where evidence of the decision-maker's awareness is otherwise lacking in a case, a close temporal proximity between the protected activity and the adverse action might sometimes serve as circumstantial evidence, thereby creating the inference that the decision-maker was aware of the protected activity. See id. ("[C]lose temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated.") (emphasis added). However, we have stated where there is actual and direct evidence of the decision-maker's awareness, there is no need to rely upon circumstantial evidence, such as temporal proximity; indeed, the language from Higdon on which the district court relied stated that "in the absence of other evidence tending to show causation" a party might establish causation by showing a temporal proximity between the protected activity and the adverse action. Higdon, 393 F.3d at 1220 (emphasis added).

　　　　Here, in contrast, Gary provided ample direct evidence of the decision-maker's awareness of her earlier discrimination filings; various members of the promotion Committee admitted in discovery that they were aware of her earlier filings, and that they considered them in reaching a decision on her promotion. This evidence is sufficient to establish that "the employer was actually aware of the protected expression at the time it took the adverse employment action." Clover 176 F.3d at 1354; Raney, 120 F.3d at 1197. Because Gary established "some causal relation between the two events," Meeks at 1021, we conclude that she has shown causation for purposes of a *prima facie* case. This is especially so given our admonition that causation is to be interpreted broadly and that a plaintiff alleging retaliation "merely has to prove that the protected activity and the negative employment action are not completely unrelated." Id. (citations and internal quotation omitted).

13

to rebut Gary's claim of retaliation.

Hale presented evidence that the promotion protocol was the same for all candidates, and provided the measurable factors by which all candidates were scored. The criteria by which the candidates were assessed were innocuous, and, despite some subjective components (a supervisor's evaluation, the Committee interview), they were generally quantifiable. Hale plainly established that, based on the evaluation method used for all applicants for the January 2005 promotions, Gary's cumulative score ranked her fourteenth out of the fifteen applicants. Even without the interviewing Committee's apparent awareness of her earlier discrimination complaints, it is clear that Gary would not have been a likely candidate for a promotion; the separate job review she received from her supervisor (who was not a member of the Committee) ranked her with the third lowest score, out of a total of fifteen applicants. The evidence presented suggests that the decision not to promote Gary to Sergeant was based on "appropriate and reasonable criteria." Gupta, 212 F.3d at 590. In sum, we conclude that Hale met his burden of presenting legitimate, non-discriminatory reasons for the adverse employment decision.

In response, Gary produced no evidence to show that Hale's explanation for the failure to promote her to Sergeant was in any way pretextual. To withstand summary judgment, Gary would have to demonstrate "that [she] [would] be able

establish at trial that the employer's proffered non-discriminatory reasons are a pre-textual ruse designed to mask retaliation." Farley, 197 F.3d at 1336 (citation and internal quotation omitted). Gary presented no evidence to show that the promotion system used by the department was a mere pretext for an opportunity to retaliate against her, other than her own statement during her deposition that she "just felt" that the department's true motives were retaliatory. R1-31, Exh. A at 37. In fact, Gary indicated during her deposition that some female officers who complained of discrimination within the department were later promoted to Sergeant. That evidence further weakens Gary's claim that the department used its ostensibly neutral promotion system as a ruse to act against those who complained of discrimination. Gary failed to show "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Farley, 197 F.3d at 1337 (citation omitted). Because there was no evidence that the reasonable explanations given for the January 2005 promotions were a ruse designed to mask a retaliatory motive, summary judgment was properly granted in favor of Hale as to those promotions.

Turning to the October 2005 promotions, Gary alleged that those promotions were retaliatory, in that the Committee members were aware of the EEOC complaint that she filed in February 2005 (as well as her other complaints of discrimination) and that as a result they retaliated against her by again denying her

a promotion to Sergeant in October. As with the January 2005 promotions, we conclude that Gary established a *prima facie* retaliation claim, but that she failed to create any genuine issue of fact as to whether the reasons given for the October 2005 promotions were a pre-textual ruse designed to mask a retaliatory motive.

Like the January 2005 promotions, Gary established a *prima facie* case of retaliation concerning the October 2005 promotions. As discussed in the prior section, Gary's EEOC filing in February 2005 (as well as her earlier complaints of discrimination throughout the 1980s and 1990s) constituted protected activities for purposes of Title VII, and the denial of a promotion to Sergeant was an adverse employment decision. As to the causation prong, Gary established causation by showing that the members of the Committee were "actually aware of the protected expression at the time [they] took the adverse employment action." Raney, 120 F.3d at 1197; Clover 176 F.3d at 1354. While Gary failed to show that the Committee members were aware of her February 2005 filing when they made their promotion decisions in October, it is undisputed that the October 2005 Committee consisted of the same four individuals who evaluated Gary pursuant to the January 2005 round of promotions. If, as discussed previously, the members of the Committee were actually aware of Gary's earlier discrimination complaints when they evaluated her in January 2005, then presumably they remained aware of the

16

prior complaints when they re-evaluated her in October 2005.[4]  Thus, regardless of

whether they were aware of the February 2005 EEOC filing, Gary already had

established, via direct evidence, that the Committee members were aware of Gary's

myriad discrimination filings when they assessed her for a promotion in October

2005.  Because such actual awareness by the Committee suggests that the protected

activities and the adverse employment decision were "not completely unrelated,"

Meeks at 1021,we conclude that Gary established a *prima facie* retaliation claim as

to the October 2005 promotions.

However, as with the January 2005 promotions, Hale successfully

"rebut[ted] the presumption of retaliation by producing legitimate reasons for the

adverse employment action" in October 2005.  Sullivan, 170 F.3d at 1059 (citation

and internal quotation omitted).  Not only were the criteria that were used to assess

the candidates based on "appropriate and reasonable" factors, Gupta, 212 F.3d at

590, but, as with the January 2005 promotions, Gary again was among the lowest

cumulative scores based on all of the criteria.  Hale established that Gary was

ranked fifteenth out of the seventeen applicants for the October 2005 promotions.

Only the top six were awarded those promotions.  In response to these facts, Gary

did not point to any evidence that the ostensibly reasonable criteria by which Gary

---

[4] See United States v. Garza, 608 F.2d 659, 666 (5th Cir. 1979) (stating, in another context, that "one cannot unring a bell") (citation and internal quotation omitted).

was assessed in October 2005 were, in effect, pre-textual ruses for a retaliatory motive. Because Gary has failed to present "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action," Farley, 197 F.3d at 1337 (citation omitted), we conclude that summary judgment was appropriately granted in favor of Hale as to the October 2005 round of promotions.

## III. CONCLUSION

Gary appeals the district court's grant of summary judgment concerning her retaliation claim brought under 42 U.S.C. § 2000e-3(a). We have carefully reviewed the record in Gary's case and the parties' respective briefs. Having done so, we conclude that although Gary did establish a *prima facie* case of retaliation as to the January 2005 promotions and the October 2005 promotions, summary judgment was nevertheless properly granted in favor of Hale, since Gary failed to establish any genuine issues of material fact. Accordingly, the judgment of the district court is **AFFIRMED.**