DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BARBARA RUSTOWICZ,**
Appellant,

v.

**NORTH BROWARD HOSPITAL DISTRICT** n/k/a **BROWARD HEALTH,**
Appellee.

No. 4D13-2059

[July 1, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marina Garcia-Wood, Judge; L.T. Case No. CACE09044253.

Michael A. Pancier of Michael A. Pancier, P.A., Pembroke Pines, for appellant.

Julissa Rodriguez and Stephanie L. Varela of Greenberg Traurig, P.A., Miami, and Caran Rothchild and Kristina L. Ciaffi of Greenberg Traurig, P.A., Fort Lauderdale, for appellee.

CONNER, J.

Barbara Rustowicz appeals the trial court's summary judgment in favor of North Broward Hospital District ("the employer"), a governmental entity supported by tax dollars. Rustowicz sued the employer alleging her employment as an audit associate was terminated in violation of Florida's Whistleblower Act ("the Whistleblower Act")[1] and Florida's Civil Rights Act ("the Civil Rights Act").[2] We affirm, without discussion, the summary judgment as to the two counts alleging violations of the Civil Rights Act. The trial court granted summary judgment on the Whistleblower count after determining there was no dispute of material fact that Rustowicz did not make protected disclosures (1) in a signed written complaint or (2) to the appropriate official. As to the Whistleblower count, we determine the

---

[1] Sections 112.3187-112.31895, Florida Statutes (2013), is Florida's Whistle-blower's Act. The section pertinent to this appeal is section 112.3187.
[2] Sections 760.01-760.11 and 509.092, Florida Statutes (2013), are formally cited as the "Florida Civil Rights Act of 1992."

trial court erred in its application of the law and reverse for further proceedings.

*Factual Background and Trial Court Proceedings*

*Events Leading Up to Discharge From Employment*

The employer is a hospital created by special taxing district legislation. The hospital's business affairs are managed by a board of commissioners ("the Board") and a chief executive officer ("CEO"). The employer has an Internal Audit Department. The Internal Audit Department's director answers to the Board, not the CEO. There is also an Audit Committee composed of one of the Board members, two outside auditors chosen by the Board, and the Internal Audit Department director. It is the Internal Audit Department's function to independently review, evaluate, and report to the Board on the accuracy of financial record keeping and compliance with applicable laws, rules, regulations, policies, and procedures. The Audit Committee was created to assist the Internal Audit Department and to act as liaison between the Board and the Internal Audit Department.

Rustowicz was an employee initially hired as an executive secretary working under a former Internal Audit Department director ("Director R"). Director R decided to eliminate the position of executive secretary and moved Rustowicz into a newly-created position entitled "audit associate." As audit associate, Rustowicz performed many of the same tasks that she did as executive secretary. However, as a result of the creation of the new position, some secretarial tasks needed by the Internal Audit Department were shared with the legal department.

Before her employment with the hospital, Rustowicz suffered from depression and anxiety, which she treated with prescribed medication. After her employment, she was diagnosed with Crohn's disease, a painful, chronic disorder of the digestive system. Stress causes Crohn's disease to flare up. Rustowicz's health issues caused her to take intermittent periods of medical leave. In addition to FMLA leave,[3] the employer had a medical leave policy allowing for up to an additional three months of leave time.

In July 2006, the Board entered into a written employment agreement with a new CEO ("CEO L"). At the time, CEO L lived in Tallahassee. One of the Board members, without the knowledge of the other Board members, also negotiated a relocation side agreement with CEO L. Pursuant to the relocation agreement, CEO L received $35,000 to cover

---

[3] FMLA leave is medical leave from employment pursuant to the federal Family and Medical Leave Act. 29 U.S.C. § 2601 *et seq.*

the expenses of relocating from Tallahassee to Broward County. CEO L left the hospital for another job in January 2008. During his employment with the hospital, CEO L never relocated from Tallahassee.

In February 2008, Rustowicz discovered the $35,000 relocation payment to CEO L. She brought the matter, as well as other questionable expense items by CEO L, to the attention of Director R. Director R directed Rustowicz to investigate the expenditures further and to determine if there were additional irregularities.

Rustowicz found at least three significant violations of law, as well as the hospital's code of conduct. She compiled a report ("the audit report"), which was submitted to Director R, and eventually the Audit Committee and the Board.

Using the normal audit investigation procedure, the Internal Audit Department would have sought a response from the person under investigation before an audit report was submitted to the Board. However, detailed information from the investigation was leaked to the press, creating a firestorm. The firestorm eventually caused the Board to discharge Director R. Director R was discharged three months after the audit report was delivered to the Board. Shortly thereafter, Director R sued the employer, keeping the firestorm going.

Tension within the Internal Audit Department was high, causing Rustowicz to fear losing her job. The stress caused her to take extensive amounts of medical leave during the five months between the discharge of Director R and hiring of the new director ("Director P"). During the interim, the employer's general counsel served as the Internal Audit Department's interim director ("Interim Director K"), even though he had no accounting experience. Interim Director K advised Rustowicz and all of the members of the Internal Audit Department that they would have to give depositions against Director R in the suit he filed against the employer.

Between September 2008 and March 2009, Rustowicz used all of her FMLA leave and the additional non-FMLA medical leave allowed for hospital employees. However, she began experiencing problems from the employer with using her medical leave and returning to work that she had not experienced before her submission of the audit report to the Board. For example, she was told she had to fill out medical forms in a more detailed manner to disclose medication she was taking. When Rustowicz wrote on the form the amount and time of day she was taking Xanax, she was told by the Employee Health Director that she was not able to return to work. This was despite the fact that Rustowicz alleged that Director R

had known for years she was taking Xanax to reduce anxiety in order to avoid or reduce the flare-ups of Crohn's disease.

Director P began working for the employer on December 29, 2008. Rustowicz was out on medical leave at that time and remained on leave until the end of February 2009. It was alleged that Director P signed off on two leave forms which extended Rustowicz's leave until the end of February. When Rustowicz attempted to return to work on February 27, she was again advised by the Employee Health Director that she could not return to work and take Xanax medication at work. In response, Rustowicz advised she was going to call her attorney and left for lunch. In the meantime, the Employee Health Director contacted Rustowicz's doctor, who faxed a statement that he had reviewed the job description for the audit associate and it was his opinion that she could take the prescribed doses of Xanax at work and safely perform her job, with no restrictions. The Employee Health Director later admitted, based on the statement from Rustowicz's doctor, that he could not preclude Rustowicz from coming to work because of her Xanax use.

Upon Rustowicz's return to work after lunch, she was immediately sent to a meeting with Director P and the Human Resources Director. At that time, she was advised the audit associate position had been eliminated due to a restructuring of the Internal Audit Department by Director P, and the former position of executive secretary had been restored, but the position was already filled by another person. Rustowicz was offered the opportunity to apply for other positions with the employer. She applied for four other positions, but was not hired for any of them because she did not meet the degree requirements.

*Trial Court Proceedings and Summary Judgment*

Rustowicz filed suit pursuing three counts. Count 1 alleged a violation of the Whistleblower Act. Counts 2 and 3 alleged violations of the Civil Rights Act.

The employer filed a motion for summary judgment as to all three counts. The parties engaged in discovery. Pertinent to the issues on appeal is an affidavit by Director P filed in support of the motion and the deposition testimony of Rustowicz and Interim Director K. The details of the pertinent summary judgment evidence are discussed in the appellate analysis below.

The trial court granted summary judgment as to all three counts. The basis for granting summary judgment of the Whistleblower count is discussed below.

"The standard of review of an order granting summary judgment is de novo." *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. 4th DCA 2007) (quoting *Biggins v. Fantasma Prods., Inc. of Fla.*, 943 So. 2d 952, 955-56 (Fla. 4th DCA 2006)). Summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c); *see also Fla. Bar v. Greene*, 926 So. 2d 1195, 1200 (Fla. 2006).

"[A summary] judgment should not be rendered . . . unless the facts are so crystallized that nothing remains but questions of law." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 (Fla. 2003) (quoting *Shaffran v. Holness*, 93 So. 2d 94, 97-98 (Fla. 1957)). "Where the record demonstrates the possibility of a disputed fact, summary judgment is improper." *Pep Boys-Manny, Moe & Jack, Inc. v. Four Seasons Commercial Maint. Inc.*, 891 So. 2d 1160, 1161 (Fla. 4th DCA 2005) (citing *Albelo v. S. Bell*, 682 So. 2d 1126, 1129 (Fla. 4th DCA 1996)). "It is the burden of the moving party to show conclusively that a genuine issue of a material fact does not exist before a summary judgment should be entered, and it should be further shown that the moving party is entitled to judgment as a matter of law." *A.B.G. Inv., Inc. v. Selden*, 336 So. 2d 444, 446 (Fla. 4th DCA 1967) (citing *Holl v. Talcott*, 191 So. 2d 40 (Fla. 1966)).

The legislature plainly stated its intent in enacting the Whistleblower Act: to prevent retaliatory action against employees and persons who disclose certain types of government wrongdoing to appropriate officials. *See* § 112.3187(2)-(7), Fla. Stat. (2009); *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1131-32 (Fla. 4th DCA 2003). "The act is remedial in nature and should be construed liberally in favor of granting access to the remedy so as not to frustrate the legislative intent." *Rice-Lamar*, 853 So. 2d at 1132 (citations omitted).

The elements of a cause of action for retaliatory discharge under the Whistleblower Act are: (1) the plaintiff engaged in statutorily protected expression; (2) the plaintiff suffered an adverse employment action; and (3) there is some causal connection between the two events. *Fla. Dep't of Children & Families v. Shapiro*, 68 So. 3d 298, 305-06 (Fla. 4th DCA 2011). The causal link element is construed broadly so that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Rice-Lamar*, 853 So. 2d at 1132-33 (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998)). Florida applies federal Title VII case law to the Whistleblower Act. *Id.* at 1132.

Because Florida applies the Title VII analysis to retaliatory discharge under the Whistleblower Act, the burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), applies.

> Under the *McDonnell Douglas* framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff successfully presents a prima facie case, the defendant employer has the burden of producing evidence of some "legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 802, 93 S.Ct. 1817. If the defendant carries its burden of producing some legitimate nondiscriminatory reason for its employment action, the plaintiff has the opportunity to prove that the proffered reason was merely a pretext for the defendant's actions. *Id.* at 804, 93 S.Ct. 1817. The ultimate burden of proving intentional discrimination against the plaintiff remains with the plaintiff at all times. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

*Byrd v. BT Foods, Inc.,* 948 So. 2d 921, 927 (Fla. 4th DCA 2007).

The trial court granted summary judgment in favor of the employer on the Whistleblower count after concluding that there was no dispute of material fact that: (1) Rustowicz did not submit "written complaints" as defined under the Whistleblower Act; and (2) she did not make protected disclosures to "[the] chief executive officer or other appropriate local official." In recognition that the stated reasoning of the trial court may not withstand appellate review, the employer makes alternative arguments as to why we should affirm summary judgment without directly asking that the tipsy coachman doctrine be applied.[4] Using the *McDonnell Douglas* framework, the employer argues Rustowicz failed to come forward with sufficient summary judgment evidence to establish: (1) the causal link between her disclosures and discharge, and (2) the employer's stated reason for discharge was pretextual. For that reason, we first review the

---

[4] Although the employer does not explicitly request that we apply the tipsy coachman doctrine, we arguably could apply it because the order granting summary judgment could be broadly read to implicitly grant summary judgment as to the Whistleblower count because Rustowicz failed to make an evidentiary showing of a prima facie case and pretext. *See Stark v. State Farm Fla. Ins. Co.,* 95 So. 3d 285, 289 n.4 (Fla. 4th DCA 2012) (declining to apply the tipsy coachman doctrine in the summary judgment context when the alternative argument was not ruled upon by the trial court).

justifications stated by the trial court for granting summary judgment.  We then address whether summary judgment should be affirmed based on the alternative arguments made by the employer.

*The Written Complaint Requirement*

Section 112.3187(7) of the Whistleblower Act states:

> (7) Employees and persons protected.--This section protects employees and persons who disclose information on their own initiative in a written and signed complaint; who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity; who refuse to participate in any adverse action prohibited by this section; or who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs; or employees who file any written complaint to their supervisory officials or employees who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general under s. 112.3189(1), or to the Florida Commission on Human Relations.

§ 112.3187(7), Fla. Stat. (2009).  As can be seen, the statute extends protection to five categories of employees: those who (1) disclose information on their own initiative in a *written and signed complaint*; (2) are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity; (3) refuse to participate in any adverse action prohibited by the act; (4) initiate a complaint through the whistleblower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs; and (5) file any *written complaint* to their supervisory officials or employees who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general under section 112.3189(1), or to the Florida Commission on Human Relations.

Rustowicz argued to the trial court, although not extensively, that she was protected because of her participation in the investigation of CEO L's expenditures.  The employer responded that even that category of employees are *required* to disclose the protected information *in writing*.  Most of the arguments to the trial court focused on the language of the statute regarding employees "who disclose information on their own

initiative in a written and signed complaint." The trial court agreed with the employer that protected disclosures had to be in writing and signed by the complainant and did not specifically address the category of employees who are requested to participate in an investigation. The employer's argument that disclosures as to that category of employees has to be in writing and signed by the complainant is incorrect.

The language of section 112.3187(7) makes it clear that the legislature intended Whistleblower protection to be extended to employees other than those who sign a written complaint. The statute specifically extends protection to:

> employees "who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity,"

> employees "who refuse to participate in any adverse action prohibited by this section," and

> employees "who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs."

If the legislature intended a *writing* requirement for those three categories of employees, it could have said so, as it did for the remaining two categories. It did not. Interpreting the statute to require a signed written complaint to obtain protection against retaliatory conduct toward employees who participate in an investigation would leave those employees who verbally disclose wrongdoing to investigators unprotected. We do not agree the legislature intended such a result, as it would create a chilling effect on investigations.

The employer cites to our analysis in *Walker v. Florida Department of Veterans' Affairs*, 925 So. 2d 1149 (Fla. 4th DCA 2006), as support for the argument that employees who are requested to participate in an investigation must make their protected disclosures in writing. In *Walker*, we wrote:

> Under section 112.3187(7), *as it applies to this case*, a protected disclosure requires an employee's "written and signed complaint," or a "written complaint to [the employee's] supervisory official[ ]."

8

*Id.* at 1150 (emphasis added). However, the employer overlooks our qualifying language "*as it applies to this case.*" *Walker* is factually distinguishable from this case. *Walker* dealt with an employee who asserted disclosure by way of a written complaint, rather than an employee who made a disclosure by participating in an investigation. Thus, our statement in *Walker*, discussing the requirement of a written and signed complaint, does not apply to the facts of this case.

Our research has revealed only one case which discusses disclosures by employees asked to participate in an investigation as protected Whistleblower activity: *Burden v. City of Oka Locka*, 2012 WL 4764592 (S.D. Fla. Oct. 7, 2012). In *Burden*, one of the plaintiffs, Burden, the deputy chief of police for the Opa Locka police department, was asked to participate in a "Confidential Inquiry" of the department initiated by the city manager. *Id.* at *2. Burden's participation consisted of making statements during a meeting with two people selected by the city manager to conduct the inquiry. *Id.* During Burden's interviews, he expressed concerns that the department was disorganized, its procedures outdated, and discipline was inconsistently handled. *Id.* Burden attributed the problems to the police chief. *Id.*

The federal trial court analyzed the "participation in an investigation" portion of section 112.3187(7), and ruled that "disclosures made pursuant to an investigation or inquiry need not be made via written and signed complaints or on the initiative of the one disclosing." *Id.* at *14. Regarding the facts of the case, the court also ruled that summary judgment was inappropriate as to Burden's Whistleblower claim, because

> a reasonable jury could draw the inference that Burden's statements to the Confidential Inquiry were evidence of a pattern of managerial abuses that amounted to gross mismanagement by [the police chief]. Therefore, a triable issue of fact exists as to whether these statements amounted to a protected activity, and summary judgment would be inappropriate.

*Id.* at *15.

We agree with the reasoning of the district court in *Burden*, and hold that, if an employee is requested to participate in an investigation, hearing, or other inquiry concerning governmental wrongdoing by an appropriate official or official entity, as discussed more fully below, and makes disclosures of wrongdoing as defined by the Whistleblower Act during or as a result of participation, the employee qualifies for protection under the

9

Act, and the disclosures need not be by a signed complaint or on the initiative of the employee. We therefore determine that summary judgment in favor of the employer on the Whistleblower claim was inappropriate for the reason that Rustowicz failed to make written disclosures.[5] Our supreme court, interpreting an earlier version of the Whistleblower Act, reached the same conclusion that a signed written complaint was not required for protection claimed by employees who participate in an investigation. *Golf Channel v. Jenkins*, 752 So. 2d 561 (Fla. 2000).

*The Disclosure to an "Other Appropriate Local Official" Requirement*

Section 112.3187(6), Florida Statutes (2009), defines the person to whom the information must be disclosed for Whistleblower protection:

> (6) To whom information disclosed.--The information disclosed under this section must be disclosed to any agency or federal government entity having the authority to investigate, police, manage, or otherwise remedy the violation or act, including, but not limited to, the Office of the Chief Inspector General, an agency inspector general or the employee designated as agency inspector general under s. 112.3189(1) or inspectors general under s. 20.055, the Florida Commission on Human Relations, and the whistle-blower's hotline created under s. 112.3189. However, *for disclosures concerning a local governmental entity*, including any regional, county, or municipal entity, special district, community college district, or school district or any political subdivision of any of the foregoing, *the information must be disclosed to a chief executive*

---

[5] An additional issue argued by the employer on appeal is that Rustowicz did not specifically plead that her Whistleblower claim was based on the "participation in an investigation" portion of the statute. However, Rustowicz also did not specifically plead that she disclosed the protected information via a written complaint. In her complaint, she generally alleged a disclosure, and did not specify the avenue by which she lodged her complaints. There is nothing in the record that the employer objected to this lack of clarity or raised the issue before the trial court.

We also note that even if the trial court properly granted summary judgment in favor of the employer based on the fact that Rustowicz did not specifically state that she was traveling under the participation in an investigation theory, it should have granted the summary judgment with leave to amend. *Rauch, Weaver, Millsaps & Co. v. Campbell-Dickey Mktg. Servs., Inc.*, 354 So. 2d 403 (Fla. 4th DCA 1978) ("Where a summary judgment should be entered, yet the plaintiff may have a cause of action not pleaded, the proper procedure is to enter the summary judgment with leave to amend.") (citing *Hart Props., Inc. v. Slack*, 159 So. 2d 236 (Fla. 1963)).

> *officer as defined in s. 447.203(9) or other appropriate local official.*

§ 112.3187(6), Fla. Stat. (2009) (emphasis added). The issue in this case is whether Rustowicz qualified for Whistleblower protection by disclosing information to an "other appropriate local official."[6] There are a few cases which discuss the application of the language "other appropriate local official," but to date, no case has specifically defined the scope of the language. Official Opinions of the Florida Attorney General have offered some guidance.

In an early case discussing the language, *Saunders v. Hunter*, 980 F. Supp. 1236, 1239-40 (M.D. Fla. 1997), a corrections officer brought a cause of action against the sheriff's office for violations of the Whistleblower Act after she reported to her supervisors incidences of sexual harassment while she was on the job. Regarding whether the corrections officer made her report to an "appropriate local official," the court wrote:

> Under Fla. Stat § 112.3187(6), an employee must report any incidents under this section to a "chief executive officer as defined in § 447.203(9) or other appropriate local official." The plaintiff alleges she reported the incidents not to a chief executive officer *but to her supervisors* who are appropriate local officials. The Court finds, since the standard for dismissing a complaint at this stage in the case is extremely low, the plaintiff has alleged sufficient facts to withstand a Motion to Dismiss as to Count I.

*Id.* at 1246 (emphasis added).

In the more recent case of *Quintini v. Panama City Housing Authority*, 102 So. 3d 688, 689 (Fla. 1st DCA 2012), the plaintiff, an employee of the housing agency for Panama City, made a report to the U.S. Department of

---

[6] Section 447.203(9), Florida Statutes (2009), states: "'Chief executive officer' for the state shall mean the Governor and for other public employers shall mean the person, whether elected or appointed, who is responsible to the legislative body of the public employer for the administration of the governmental affairs of the public employer." Rustowicz argues Director R was "a chief executive officer as defined in s. 447.203(9)" because he answered directly to the Board, which Rustowicz contends was the "legislative body of the public employer." Because it is not necessary to do so to resolve this appeal, we do not address the merits of this argument.

11

Housing and Urban Development that he was not being paid the same rate as other maintenance workers. The First District in *Quintini* noted that there had not been any district court decisions analyzing what constituted an "other appropriate local official," so it looked to Attorney General Opinions for guidance. *Id.* The court provided a summary of the Attorney General Opinions:

> However, the phrase has been the subject of several Attorney General Opinions. *See* Op. Att'y Gen. Fla.2012–20 (2012) (indicating that transit authority board of directors could be appropriate local official *to receive and investigate whistle-blower complaints*); Op. Att'y Gen. Fla.2010–48 (2010) (noting that *county designated inspector general and executive director of county ethics commission as appropriate local officials*); Op. Att'y Gen. Fla. 99–07 (1999) (stating that county inspector general qualified as an appropriate local official); Op. Att'y Gen. Fla. 96–40 (1996) (finding *city's ethics commission* was an appropriate local official under the statute because it could *investigate [violations]* and take corrective action).

*Id.* (emphasis added). The court also noted that "[t]he common element in these opinions is that the person or entity deemed to be an 'other appropriate local official' was affiliated with the local government in some way." *Id.* The court found that, since the plaintiff reported to a *federal department*, and his complaint was regarding a *city's* housing authority, his disclosure was not made to an appropriate *local* official. *Id.* at 691. In reaching its decision, the First District alluded to a statement in *Burden* that "appropriate local officials" include officials and entities who are empowered to investigate complaints and make reports or recommend corrective action. *Id.* at 689-90.

We find persuasive the description of an "other appropriate local official" stated in the Attorney General Opinions and relied upon in *Quintini* and *Burden*. As the court observed in *Burden*:

> Significantly, the Attorney General has found individuals to be "appropriate local officials" where they are *empowered to investigate complaints and make reports or recommend corrective action.*

*Burden*, 2012 WL 4764592, at *13 (emphasis added). We find particularly persuasive the Attorney General Opinion which opined that a town's code of ethics commission would qualify as an "appropriate local official." Op. Att'y Gen. Fla. 96-40 (1996). The Attorney General reasoned that because

12

the town's code of ethics commission "was created to administer the town's code of ethics by conducting investigations and making public reports on all complaints concerning breaches of public trust by town officials and employees," it qualified as an "appropriate local official" under the Act. *Id.*

Adopting the reasoning of the Attorney General, as well as the reasoning by the courts in *Quintini* and *Burden,* we hold that for protection under the Whistleblower Act, disclosures of wrongdoing by a local government entity must be made to either:

> (1) a chief executive officer, as defined in s. 447.203(9), Florida Statutes (2009); or

> (2) an official or official entity who is affiliated with the violating governmental entity and has the authority to investigate, police, manage, or otherwise remedy the violation or act by the violating governmental entity.

We agree with the Attorney General that the protection does not require disclosure to a singular person or official; the protection extends to disclosures to members of boards, committees, departments, or divisions affiliated with the offending governmental entity, so long as the board, committee, department, or division has the authority to investigate, police, manage, or otherwise remedy the violation or act by the violating governmental entity.

In this case, the Internal Audit Department had the responsibility to monitor and investigate employee compliance with the company's rules and policies regarding finances. According to the employer's Code of Conduct, the Internal Audit Department "routinely conducts internal audits of issues that have regulatory or compliance implications. The organization also routinely seeks other means of ensuring or demonstrating compliance with the laws, regulations, and [the employer's] policy." As discussed in *Quintini*, Director R was a *local* official since he was also an employee of the employer. Additionally, as in *Saunders*, Director R was Rustowicz's supervisor.[7] The employer counters that it is the Corporate Compliance Office that investigates violations, not the Internal Audit Department. However, it seems that both departments play a role in investigating compliance issues, especially when you consider that the employer's description of the function of the Internal Audit

---

[7] We note that the Fifth District has held that disclosing to a supervisor, alone, is not enough. *See Kelder v. ACT Corp.,* 650 So. 2d 647, 649 (Fla. 5th DCA 1995). We do not determine *Kelder* to apply to this case because in *Kelder* the employer was not a governmental entity.

13

Department includes conducting audits that have compliance implications.

Additionally, there is evidence in the record that Rustowicz made her disclosures directly to the Board as part of her participation in the investigation. Although not argued, it seems beyond debate that the Board has the authority to investigate, police, manage, or otherwise remedy a violation by an employee of the governmental entity.

Thus, we conclude the trial court erred in granting summary judgment on the Whistleblower count for the reason that Rustowicz did not make a protected disclosure to an appropriate local official.

*The Employer's Alternative Arguments for Affirming Summary Judgment*

The employer argues two alternative grounds not addressed by the trial court in affirming summary judgment on the Whistleblower count. The employer argues Rustowicz failed to present sufficient summary judgment evidence to prove: (1) the causal link between her disclosures and discharge, and (2) the employer's explanation for discharge was pretextual.

Causation may be proved by direct or circumstantial evidence. *Smith v. Airtran Airways, Inc.*, 744 F. Supp. 2d 1274, 1278 (M.D. Fla. 2010) (holding that wrongful discharge under Title VII requires proof of causation by direct evidence or circumstantial evidence). It is unusual for the plaintiff to travel on direct proof of discrimination to show causation; the typical case relies upon circumstantial evidence of causation. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997) ("Frequently, acts of discrimination may be hidden or subtle; an employer who intentionally discriminates is unlikely to leave a written record of his illegal motive, and may not tell anyone about it."); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) ("The distinct method of proof in employment discrimination cases, relying on presumptions and shifting burdens of articulation and production, arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire."). In this case, Rustowicz relies on circumstantial evidence to establish the causal link.

*Causation and Temporal Proximity*

The causal link element for retaliatory discharge under the Whistleblower Act requires the plaintiff to prove the protected activity and discharge were not wholly unrelated. *Shapiro*, 68 So. 3d at 306. "Close temporal proximity between the protected activity and the adverse employment action can show that the two events were not wholly

unrelated." *Id.* (citation omitted). "If there is a substantial delay between the two events, the plaintiff must present other evidence tending to show causation." *Id.* (citation omitted).

The employer argues that causation cannot be established because the length of time between Rustowicz's disclosures of wrongdoing in the audit report and her discharge, ten months, does not meet the temporal proximity requirement. We are not persuaded by this argument.

The argument focuses on the wrong time frame and ignores the federal case law that the causation element for retaliatory discharge can be satisfied by sufficient evidence that the decision-maker of the employer was actually aware of the protected conduct, and that there was a close temporal proximity between *the decision maker's awareness* of the protected activity and the adverse employment action. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) ("We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action.") (citation omitted); *Gary v. Hale*, 212 Fed. Appx. 952, 957 (11th Cir. 2007) ("[W]e have repeatedly indicated that a plaintiff may satisfy the causal link in a retaliation case by establishing that 'the employer was actually aware of the protected expression at the time it took the adverse employment action.' . . . That is, the causation threshold may be satisfied if it can be shown 'that the person taking the adverse action was aware of the protected expression.'") (internal citations omitted). Moreover, "[s]uch awareness [referring to the decision maker] may be established either by direct evidence, or by circumstantial evidence, such as proximity in time." *Gary*, 212 Fed. Appx. at 957 (citations omitted).

In this case, an affidavit by Director P was filed in support of the motion for summary judgment. In the affidavit, Director P stated that she was the sole decision-maker regarding the elimination of the audit associate position. She stated that she began working in the Internal Audit Department on December 29, 2008. The affidavit asserts Director P made the decision to eliminate the audit associate position and the employer's chief executive officer signed off on documents eliminating the position on February 12, 2009. The affidavit states the premise of her reorganization plan was the Internal Audit Department would work most productively with an executive secretary and five auditors with degrees or certificates in accounting. She further affirmatively stated she was unaware of Rustowicz's participation in the audit report concerning CEO L before her decision to eliminate the audit associate position.

15

In opposition to the motion for summary judgment, Rustowicz filed portions of the affidavit of Interim Director K in which he testified that on January 23, 2009, he emailed a copy of CEO L's response to the audit to Director P. Although in the deposition he denied remembering why he sent CEO L's response to the audit, he admitted he was sure there was some discussion about CEO L's response before he emailed it to Director P. Moreover, Director P, in her deposition, did not deny receiving the email with CEO L's response from Interim Director K on January 23, but she did not *recall* whether she read the email.

Rustowicz presented sufficient summary judgment evidence to circumstantially prove that the decision maker (Director P) was aware of Rustowicz's protected disclosures at the time of the adverse employment action (elimination of the audit associate position), and the adverse action was sufficiently temporally close to the decision maker's awareness (less than one month), to survive summary judgment. *See Farley*, 197 F.3d at 1337 (holding that seven week delay between protected activity and adverse employment action was sufficient temporal proximity to make a prima facie showing of causation).

*Pretext*

Because the *McDonnell Douglas* burden-shifting analysis applies to Whistleblower claims, it is useful to examine federal case law under Title VII regarding causation and pretext in deciding if evidentiary standards have been met to survive summary judgment.

Regarding pretext, the United States Supreme Court has observed:

> Proof that the [employer's] explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See [*St. Mary's Honor Center v. Hicks*, 509 U.S. 517 (1993)] ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt.". . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the

employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147-48 (2000) (internal citations omitted). With regards to the sufficiency of the evidence to establish the employer's asserted justification is false, the Eleventh Circuit has written that

> a plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable. In evaluating a summary judgment motion, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."

*Jackson v. State of Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005) (internal citations omitted); *see also Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1194 (11th Cir. 2004) (reversing judgment as a matter of law in favor of the employer after determining the employee produced sufficient evidence that the employer's explanation was unworthy of credence stating, "[o]nce [the employer's decision maker's] credibility is damaged, the jury could infer that he did not fire [the employee for the reason stated], but rather because of her disability").

Applying the above principles articulated by the federal courts regarding the sufficiency of evidence to avoid summary judgment on the issue of pretext, we conclude that the trial court erred in granting summary judgment. Rustowicz produced the following evidence to attack the credibility of Director P's assertion that the audit associate position was eliminated due to a legitimate restructuring of the Internal Audit Department that had nothing to do with Rustowicz's participation in the audit report:

> Despite Director P's assertion she was unaware of the details of the audit report and Rustowicz's involvement in the audit, Rustowicz presented direct evidence that Director P discussed CEO L's response to the audit with the interim director and received a copy of CEO L's response by email prior to Rustowicz's discharge.

17

Despite Director P's assertion she did not know Rustowicz suffered from anxiety, depression, and Crohn's disease, it was alleged that Director P signed two continued leave approval slips after she became the director of the department.

Director P did not offer the newly restored executive secretary position to Rustowicz, even though Rustowicz had performed the job for several years prior to becoming an audit associate (performing the same tasks as the executive secretary), because she assumed Rustowicz would not want the pay cut.

We agree with Rustowicz that such summary judgment evidence could demonstrate to a reasonable juror there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" to conclude the reasons are "unworthy of credence." *Jackson*, 405 F.3d at 1289; *Cleveland*, 369 F.3d at 1194.[8]

Thus, we disagree with the employer's alternative arguments that summary judgment should be affirmed as to the Whistleblower count.

*Appellate Disposition*

We affirm summary judgment as to counts 2 and 3 of the complaint. We reverse summary judgment as to count 1 and remand for further proceedings.

*Affirmed in part; Reversed in part and remanded.*

CIKLIN, C.J., and FORST, J., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

---

[8] We note that the standard for granting summary judgment in Florida is more stringent than in the federal court system. *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 923-24 (Fla. 4th DCA 2007) (explaining that federal cases permit summary judgment by a different standard and are of limited precedential value in Florida).